UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**KRISTIE STUDDARD,**

    **Plaintiff,**

v.

**ANDREW SAUL, Commissioner
of Social Security,**

    **Defendant.**

Case No.:  4:19-cv-0619-CLM

## MEMORANDUM OPINION

Kristie Studdard applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") with the Social Security Administration ("SSA"). After an Administrative Law Judge ("ALJ") issued an opinion denying Studdard's application, Studdard's treating physician wrote a letter that opined on her ability to work based on her medical history. The SSA Appeals Council denied Studdard's request to review the ALJ's opinion based on this new letter, making the ALJ's opinion the Commissioner's final decision.

Studdard challenges both the ALJ's opinion and the Appeals Council's decision. As detailed below, the court finds no error in the ALJ's opinion but agrees that the Appeals Council wrongly refused to consider the letter from her treating physician. The court remands the case for the Commissioner to consider the letter.

1

**Statement of the Case**

A. **Factual Background**

Kristie Studdard was 42 years old when she filed for benefits. She has a GED and went to college to study cosmetology. Whether she earned a degree is not clear from the record. Studdard worked as a hair stylist or cosmetologist before applying for benefits, but she has not worked since 2016. Doc. 7-3, 37-39.

Studdard claims that she cannot work because she has "severe" pain in her legs, hips, knees, ankles, back, hands, and neck. She has been diagnosed with rheumatoid arthritis, Sjogren's syndrome, and fibromyalgia. The record also reflects that she suffers from depression, anxiety, and panic disorder. At the time of the hearing (January 2018), Studdard was taking Prozac, Prilosec, Klonopin, Trazodone, Suboxone, and Flexeril. She was also receiving methotrexate shots once a week. *Id.* at 40-45; doc. 9, 6-9.

Studdard lives with her daughter and son-in-law. Studdard testified that they moved in to assist her, financially and otherwise. Studdard testified that she could wash dishes and do other housework "[w]hen [she's] up to it." She testified that she was unable to do yardwork and that she could not drive for 45 minutes without stopping to rest. Doc. 7-3, 43-45.

B. **Determining Disability**

The SSA has created the following five-step process to determine whether an

individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform her past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering her residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (2019) (Step 1); 20 C.F.R. § 404.1520(c) (2019) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2019) (Step 3); 20 C.F.R. § 404.1520(e-f) (2019) (Step 4); 20 C.F.R. § 404.1520(g) (2019) (Step 5).

As shown in the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity" ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis.

**C. Studddard's Claims and the ALJ's Decision**

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ, and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4) (2019).

Studddard applied for DIB and SSI benefits in April 2016, claiming that she was unable to work due to various ailments, including rheumatoid arthritis, degenerative disc disease, endometriosis, Sjogren's syndrome, and fibromyalgia. After an initial denial in May 2016, Studddard requested a hearing, which an ALJ conducted in January 2018. The ALJ ultimately issued an opinion denying Studddard's claims in July 2018. Doc. 7-3, 20.

At Step 1, the ALJ determined that Studddard was not engaged in substantial gainful activity, and thus her claim would progress to Step 2. *Id.* at 22.

At Step 2, the ALJ determined that Studddard suffered from the following severe impairments: degenerative disc disease, osteoarthritis, Sjogren's syndrome, panic disorder, anxiety, endometriosis, and irritable bowel syndrome. *Id.* Accordingly, the ALJ proceeded to Step 3.

At Step 3, the ALJ found that none of Studddard's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 24. Thus, the ALJ next had to determine Studddard's residual functional capacity.

The ALJ determined that Studdard had the residual functional capacity "to perform light unskilled work not requiring complex instructions or procedures," with certain additional limitations:

- Studdard can never climb ropes, ladders, or scaffolds;

- Studdard cannot work at unprotected heights or with hazardous machinery;

- Studdard can only occasionally stoop, crouch, crawl, and kneel;

- Studdard requires reasonable access (on premises) to restroom facilities at the usual and customary breaks;

- Studdard can have only occasional contact with the general public.

*Id.* at 25.

At Step 4, the ALJ determined that Studdard had no past relevant work. *Id.* at 28. At Step 5, the ALJ determined that Studdard could perform jobs, such as marker, router, or folder, that exist in significant numbers in the national economy, and thus Studdard was not disabled under the Social Security Act. *Id.* at 29.

### D. The Appeals Council Decision

In August 2018—one month *after* the ALJ's decision—Studdard visited Dr. Richard Cunningham, who had been treating Studdard since July 2016 for pain management and addiction to pain medication. After that visit, Dr. Cunningham wrote a letter opining that "based on her history as well as observation that her functional status is poor and her ability to work is very poor." Doc. 7-3, 15.

Studdard requested that the SSA Appeals Council review the ALJ's decision, based in part on Dr. Cunningham's letter. The Appeals Council declined to consider the letter because the letter "does not relate to the period at issue" and thus "does not affect the decision whether you were disabled beginning on or before July 3, 2018" (*i.e.,* the date of the ALJ's opinion). The Appeals Council declined to review the ALJ's opinion, making it the decision of the Commissioner. *Id.* at 1-3.

### E. The Present Case / Standard of Review

Studdard filed this case pursuant to 42 U.S.C. § 405(g), which limits this court to determining whether (a) the ALJ made a legal error or (b) the ALJ's fact findings are supported by "substantial evidence." *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The bar for "substantial evidence" is low; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Perales*, 402 U.S. at 401.

## Analysis

Studdard attacks the Commissioner's decision on five grounds; three relate to the ALJ's opinion and the other two relate to the Appeals Council's decision. Doc. 9, 2. The Court will address each of Studdard's arguments in turn.

**I.    The ALJ committed no legal errors.**

Studdard claims in her brief that the ALJ committed three "errors of law":

1. The ALJ failed to properly weigh the opinions of her examining physician and her examining psychologist;

2. The ALJ improperly applied the pain standard; and,

3. The ALJ improperly applied SSR 12-2p when considering her evidence of fibromyalgia.

Doc. 9, 17-43. Studdard abandoned Issues 2 (pain standard) and 3 (fibromyalgia) at oral argument, however, so the court finds that both issues are waived.

That leaves Issue 1, which raises two distinct challenges to the ALJ's handling of two examiners' opinions: (1) The alleged failure to provide clear reasons for assigning lesser weight to the examiners' opinions and (2) the alleged failure to apply the "degrees of suspicion" standard to the examiners' opinions. Doc. 9 at 2, 17-22. The court addresses each in turn.

**A. The ALJ properly weighed the consultative examiners' opinions.**

The first issue involves two consultative examiners appointed by the ALJ in connection with Studdard's application: (a) Dr. Khdair, who opined on Studdard's physical impairments (*e.g.*, back pain, range of motion), and (b) Dr. Pugh, who opined on Studdard's mental impairments (*e.g.*, anxiety, panic disorder). The ALJ considered both opinions and accorded "little weight" to the opinion of Dr. Khdair

and "some weight" to the opinion of Dr. Pugh. Doc. 7-3, 28.

Studdard argues that the ALJ erred by failing to state "with some measure of clarity" his reasons for "repudiating" the opinions of Dr. Khdair and Dr. Pugh. As an initial matter, the court notes that, as consultative examiners who saw Studdard only once, neither Dr. Khdair's nor Dr. Pugh's opinion is entitled to deference or special weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

More importantly, the ALJ stated his reasons for affording both opinions limited weight. The ALJ found Dr. Khdair's opinion to be "inconsistent with his own evaluation and with the treating records that show only conservative treatment and medication management." As for Dr. Pugh, the ALJ found that "her medical source statement [was] incomplete and thus of little weight." Doc. 7-3, 28. In other words, the ALJ plainly stated the weight he gave both opinions and his reasons for assigning those weights.

The ALJ may discount a medical opinion based on a medical source's limited treatment relationship with a claimant, the opinion's inconsistency with other evidence in the record, or the source's failure to provide adequate supporting evidence for his or her opinion. *See* 20 C.F.R. § 416.927(c). The Court thus

concludes that the ALJ committed no error.

### B. The Eleventh Circuit has not adopted a "degree of suspicion" standard for Commissioner-appointed examiners.

Studdard also argues that the ALJ failed to apply the "degree of suspicion standard" applied by the Seventh Circuit to opinions from consultative examiners who were appointed by the ALJ. Doc. 9, 20 (citing *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995). But as this court recently noted, the Eleventh Circuit has declined to adopt the "degree of suspicion" standard for ALJ-appointed examiners and instead applies the *Crawford* standard mentioned above. *See Wilson v. SSA Comm'r*, 2020 WL 1285927 at *4 (N.D. Ala. Mar. 16, 2020). As a result, Studdard's argument under the "degree of suspicion" standard is futile.

## II. The Appeals Council Erred in Declining to Review the ALJ's Decision.

Studdard's final two arguments work together: The Appeals Council erred when it refused to consider Dr. Cunningham's letter (Issue 4), and once that "new evidence" is considered alongside the evidence presented to the ALJ, the decision to decline benefits is not supported by substantial evidence (Issue 5).

1. <u>Background</u>: Dr. Cunningham helped Studdard manage pain and overcome her addiction to pain medication. Dr. Cunningham began treating Studdard in July 2016. The ALJ issued his opinion denying benefits on July 3, 2018. Studdard visited Dr. Cunningham one month later (August 9, 2018), and that same

9

day, Dr. Cunningham wrote the letter at issue here. Doc. 7-3, 15.

In his letter, Dr. Cunningham recounts Studdard's medical history, including the impairments discussed by the ALJ when determining Studdard's residual functional capacity (*e.g.*, chronic pain, degenerative disc disease, rheumatoid arthritis, Sjogren's syndrome, fibromyalgia, depression). *Id.* Dr. Cunningham stated that Studdard's chronic joint pain "has been disabling," and then stated that "[i]t is my opinion based on her history as well as observation that her functional status is poor and her ability to work is very poor. Her rehab potential is minimal." *Id.*

Studdard presented this letter to the Appeals Council as "new evidence" to consider in the first instance.

2. <u>Chronological Relevance</u>: The Appeals Council will review an ALJ decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5)-(b).

No one disputes that Dr. Cunningham's letter is new, in that he wrote it after the ALJ issued his opinion. The Appeals Council instead declined to consider the letter because it found that the letter was not chronologically relevant. Doc. 7-3, 2 ("This additional evidence does not relate to the period at issue."). This was error. While it is true that Dr. Cunningham wrote the letter after the ALJ issued his opinion,

Dr. Cunningham's opinion stems from Studdard's ailments during the relevant period—*i.e.,* from the time Studdard applied for benefits (April 18, 2016) through the issuance of the ALJ's opinion (July 3, 2018). The Eleventh Circuit has found that similar opinions written after an ALJ's opinion are chronologically relevant if they are based on ailments that "relate back to the period before the ALJ's decision." *Washington v. SSA Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015).

    3. Materiality: The Commissioner conceded at oral argument that, in light of *Washington*, Dr. Cunningham's letter contains chronologically relevant material. The Commissioner urged the court to affirm by instead finding that Dr. Cunningham's letter was not material; that is, there is no "reasonable probability" that adding Dr. Cunningham's letter to the existing evidence "would change the administrative result." *Washington*, 806 F.3d at 1321. Studdard countered that Dr. Cunningham's status as Studdard's treating physician means that, at the very least, there is a reasonable probability that his opinion could change the result.

Two lines of cases support (but do not mandate) Studdard's argument that the ALJ should be the first to review a treating physician's opinion. The first line concerns the present scenario—*i.e.,* when the Appeals Council fails to review new opinion evidence. *See Washington*, *supra*. As Studdard points out, the new opinion evidence that warranted remand in *Washington* was submitted by an examining physician, not a treating physician. *Id*. at 1322. Studdard argues that, if the Eleventh

Circuit found that a contradictory examining physician's opinion might change the outcome of an application in *Washington*, then surely the Circuit Court would reach the same result if the new opinion comes from the applicant's treating physician, an opinion that is generally entitled to more weight. *See* 20 CFR § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources[.]").[1]

Studdard's argument has some support. In *Washington*, the Eleventh Circuit noted that its finding of materiality was based in part on the notion that a reasonable person could choose between two examining physicians' conflicting opinions. *Washington*, 806 F.3d at 1322. The Circuit Court reserved the question of whether materiality could be found if the new opinion of an examining physician contradicted the existing opinion of a "medical provider who treated" the applicant. *Id.* at 1322, n.7 (citing 20 CFR § 404.1527(c)(2)). In other words, the court acknowledged that the additional weight given to treating sources plays a factor—and may even be determinative—when determining whether new opinion evidence is material.

The second line of cases involves instances in which the ALJ fails to consider a treating physician's opinion or fails to articulate reasons for failing to give a treating physician's opinion considerable weight. *See, e.g.*, *Winschel v. SSA*

---

[1] The Commissioner conceded at oral argument that Dr. Cunningham was Studdard's "treating source" and that the regulations giving more weight to treating sources apply to Studdard's application.

*Comm'r*, 631 F.3d 1176 (11th Cir. 2011); *Wiggins v. SSA Comm'r*, 679 F.2d 1387 (11th Cir. 1982). As this court recently noted, the Eleventh Circuit's published opinions on an ALJ's failure to properly address a treating source opinion did not apply harmless error analysis; the Circuit Court simply reversed and remanded. *See Simmons v. SSA Comm'r*, 2020 WL 1235614 (N.D. Ala. March 10, 2020). While this court stated in *Simmons* why the harmless error standard applies to cases involving the failure to consider a treating source opinion, the Eleventh Circuit has yet to apply it in a published opinion. Instead, they have simply remanded such cases for the ALJ to consider the treating source opinion in the first instance.

Given these cases, the court finds that remand is the proper outcome here. The ALJ (not this court) should make the first factual and legal findings about Dr. Cunningham's letter.

## Conclusion

For the reasons stated above, the court finds that (a) the Appeals Council erred in determining that Dr. Richard Cunningham's August 2018 letter was not chronologically relevant and (b) the ALJ should be the first to consider whether Dr. Cunningham's letter impacts the Commissioner's denial of benefits. The Court will enter a separate order remanding this case for further proceedings.

**DONE** on July 24, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE